El Pueblo de Puerto Rico, demandante y apelado, *v.* Carmelo Cortés, acusado y apelante.

No. 2558.—*Visto:* Julio 20, 1925. *Resuelto:* Diciembre 23, 1925.

1. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—ERRORES NO PERJUDICIALES—ADMISIÓN DE PRUEBAS.—No constituye error fundamental el admitir como prueba una certificación de la inscripción del nacimiento de una ofendida que en la acusación y en la certificación figura con el nombre de Carmen aunque la madre de dicha ofendida declarara que se llamaba Carmen María y así fuera nombrada en otra acusación presentada anteriormente en la misma causa.

2. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—ERRORES NO PERJUDICIALES—IMPUGNACIÓN DE LA DECLARACIÓN DE UN TESTIGO.—Cuando no se demuestra en apelación que el acusado dejara de obtener todo lo que se proponía al impugnar la declaración de un testigo, al ser interrumpido erróneamente por el juez, el error cometido no lleva consigo la revocación de la sentencia apelada.

3. DERECHO PENAL—HECHOS EN CONTROVERSIA Y PERTINENTES A LAS CUESTIONES LITIGIOSAS Y *Res Gestae*—MANIFESTACIONES DE LA OFENDIDA—VIOLACIÓN.— Las manifestaciones hechas a la madre por una hija al momento de llegar a su casa después de haber estado toda una noche con el acusado, en circunstancias que demuestran que se hicieron mientras la excitación nerviosa de la hija todavía la dominaba y sus facultades reflejas estaban aún en suspenso, son admisibles en evidencia.

4. DERECHO PENAL—EVIDENCIA—CONFESIONES—DECLARACIÓN JURADA DEL ACUSADO EN LA INVESTIGACIÓN PRELIMINAR.—La confesión de un acusado en el cuartel de policía hecha constar en una declaración jurada, firmada por él ante el fiscal y en la cual aparece que se hicieron al mismo todas las advertencias de ley, en ausencia de indicio alguno de coacción, es admisible en evidencia.

5. VIOLACIÓN—PROCESO Y CASTIGO—EVIDENCIA—SUFICIENCIA DE LA MISMA.—Para sostener una sentencia condenatoria en un caso de violación perpetrado con una niña menor de catorce años, basta la prueba de que el acusado realizó con la menor actos carnales. No es necesario que se pruebe que medió engaño, fuerza o violencia.

SENTENCIA de *Enrique Lloreda,* J. (Arecibo), condenando al acusado por delito de violación. *Confirmada.*

*Luis Mercader,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Carmelo Cortés, mediante información del Gran Jurado, fué acusado de haber, el 25 de agosto de 1924, en Arecibo, realizado actos carnales con Carmen Guzmán, menor de catorce años, en contra de su voluntad, venciendo por la fuerza la resistencia que la niña opuso. El 28 de marzo, de acuerdo con un veredicto de culpable rendido por el jurado el 25, la corte de distrito lo condenó a cinco años de presidio. Nó conforme Cortés, apeló, señalando en su alegato la comisión de cinco errores.

[1] El primero se refiere a la admisión como prueba de cierta partida de nacimiento. En el acto del juicio fué llamada a declarar Margarita Martínez. Dijo que conocía a Carmen María Guzmán; que era hija suya y de Lorenzo Guzmán y que cumpliría catorce años en el año que se celebraba el juicio. La partida de nacimiento expresa que se inscribió el de una niña de nombre Carmen, hija legítima de Lorenzo Guzmán y Margarita Martínez, nacida el once de

octubre de 1910.   La oposición del acusado se formuló por
su abogado así: "porque en ella (en la partida) aparece
el nombre de Carmen Guzmán Martínez, y en la acusación,
la primera vez aparece con el nombre de María, y de acuerdo
con una solicitud que hizo el Fiscal dice que se llama Car-
men, y se ve que no es la misma."

En los autos se hace referencia a la celebración de otro
juicio en esta causa como veremos luego, pero nada consta
con respecto a lo que exactamente ocurriera en relación con
el nombre de la ofendida.   Quizá en efecto la primera acu-
sación consignaba que el nombre era María; quizá a virtud
de lo que revelaron los libros del Registro Civil, se enmendó,
pero lo único que demuestran los autos tales como han sido
certificados es que la acusación dice Carmen y la partida
Carmen.   La declaración de la madre explica todo al pare-
cer correctamente, al decir que su hija se llama Carmen
María.   El nombre de María, se agrega muy comúnmente
en esta Isla a otro nombre no sólo cuando se trata de una
mujer, sino en el caso de varones.   La situación es, pues,
distinta a la que surgió en *El Pueblo* v. *Torres,* 34 D.P.R.
300.   Además allí lo que se resolvió fué que: "En un pro-
ceso por asesinato, la enmienda en el apellido del interfecto
es una de fondo no permisible en el juicio, y no puede ha-
cerse sin la intervención del Gran Jurado."   Y aquí si se
enmendó la acusación no fué en el juicio, debiendo presu-
mirse que se actuó de acuerdo con la ley.

[2] Sostiene el apelante que la corte erró al negarle el
derecho a impugnar la declaración de la ofendida por medio
de manifestaciones hechas por ella misma en otro juicio.
Cuando el Fiscal terminó su interrogatorio, la defensa co-
menzó el suyo así:

"A preguntas del abogado Sr. Mercader, declaró:

"A la pregunta: ¿Recuerda la testigo si en el otro juicio, que
por primera vez se celebró ante este Tribunal, Ud. declaró en esa
silla misma que Ud. era novia del acusado, y que se fué con él vo-
luntariamente, y que estuvo toda la noche en casa de una querida

que tenía él, y que al día siguiente la querida la había echado de la casa?—Contestó: Yo lo declaré así, pero no fueron esas palabras. Que la señora de él no la botó de la casa y no durmió en casa de la señora.

"Y a la pregunta: La otra vez que estuvo en esa silla, y ante el Jurado, en el juicio que por primera vez se celebró dijo, que se había ido del baile ese a las once de la noche, voluntariamente con éste, que era su novio, y que había pasado toda la noche en casa de una querida de él; diga si es cierto que declaró eso aquí?—Contestó: No lo he declarado así.

"Que no dijo que ese muchacho era novio suyo; que tampoco dijo que era voluntariamente que se fué con él; que se fué inocentemente con él. Que dijo que era por su gusto, que fué con él."

En este estado intervino el juez expresando que la manera de impugnar el testimonio era leyendo a la testigo su anterior declaración. Solicitó entonces la defensa que el taquígrafo compareciera con el récord del juicio. La corte no accedió porque en su opinión ello interrumpiría la vista. Y la defensa tomó excepción. En su alegato el apelante no demuestra que no hubiera conseguido todo lo que intentaba cuando el juez intervino innecesariamente. Por dos veces recordó a la testigo sus manifestaciones en el juicio anterior y la testigo contestó explicándolas.

Al practicar su prueba la defensa intentó introducir la declaración del taquígrafo para contradecir el testimonio de la ofendida y la corte no accedió. A nuestro juicio la negativa de la corte fué errónea, pero el acusado no discute esta segunda situación en su alegato. Siendo ello así, habiendo en consideración lo dicho anteriormente, esto es, que no se ha demostrado que el acusado usando el método escogido por él mismo no hubiera conseguido todo lo que deseaba cuando intervino el juez, estimamos que el error cometido por sí solo no lleva consigo la revocación de la sentencia.

[3] El tercer error se refiere a haber permitido la corte a la madre de la ofendida que declarara sobre lo que la hija

le dijo al llegar a su casa a la mañana siguiente de la noche en que se cometió el delito.

La madre declaró que al llegar la hija por la mañana a su casa "la miró a ella y le hizo una pregunta y se echó a llorar." Entonces la contó lo ocurrido. Dijo también que vió la ropa manchada de sangre y "después dió cuenta al Fiscal, en los momentos." Cuando se llamó a declarar a la madre ya lo había hecho la hija diciendo que había estado en un baile y luego el resto de la noche con el acusado.

Bajo esas circunstancias no cometió error la corte al admitir la declaración de la madre. Véase el caso de *El Pueblo* v. *Calventy,* 34 D.P.R. 390 que contiene una amplia cita de la obra del profesor Wigmore, sobre Evidencia, y también el de *El Pueblo* v. *Ruiz,* 18 D.P.R. 606.

[4] El cuarto error trata de la llamada confesión del acusado. Declarando Margarita Martínez dijo que el acusado había hecho manifestaciones, "que se dió culpable en seguida." Se opuso la defensa. Eso no obstante el Fiscal siguió preguntando y la testigo contestó que en el cuartel de la policía el acusado "dijo que había sido el culpable, que había hecho el daño." No obstante la larga lucha entre la defensa y el Fiscal, los autos no demuestran que la defensa tomara excepción.

Fué llamado entonces a declarar Ramón Muñoz, Sargento de la Policía Insular. Expresó que había oído ciertas manifestaciones del acusado. Y respondiendo al juez, dijo:

"Que esas preguntas fueron hechas por el Fiscal: que en ese momento el Fiscal estaba investigando con la niña el asunto que le había sucedido con el acusado, y el acusado espontáneamente manifestó, que sí, que él había tenido contacto con ella. Que llamó al acusado para si quería declarar o nó y había dicho que sí que estaba dispuesto a declarar y entonces le hizo esa manifestación. Que no recuerda si esa manifestación fué precedida de alguna manifestación, y que no recuerda si el Fiscal le advirtió que tenía derecho a declarar o no. Que no recuerda si antes de prestar la declaración el fiscal le manifestó que tenía derecho a declarar o no. Que no recuerda si le dijo y advirtió que esa manifestación que iba a prestar

en aquel momento podía perjudicarle. Que el testigo llegó en ese momento de esas palabras y si otras habían transcurrido no sabe; y que no presenció si eran bajo juramento.''

El juez manifestó que no admitía la declaración. El fiscal preguntó de nuevo al testigo y éste contestó: ''Que el acusado hizo la manifestación: quiero declarar, y la oyó desde fuera.'' La corte insistió en no admitir la declaración y el Fiscal dió por terminado su caso.

Comenzó la defensa su prueba y ocurrió lo que sigue:

''El Hon. Fiscal dijo: que antes que nada iba a pedir permiso a la corte, porque había anunciado que había terminado su prueba, pero que se había encontrado que existía la declaración del acusado, escrita, e iba a introducirla como prueba, y que estaba con todos los requisitos.

''El Hon. Juez concedió el permiso; y el abogado Sr. Mercader manifestó, que después de haber renunciado el Fiscal al resto de su prueba volvía otra vez para que la corte le conceda ese permiso especial.

''El Hon. Juez preguntó: si esa declaración estaba firmada por el acusado; y el Hon. Fiscal manifestó que sí, y entonces el Hon. Juez dijo, que podía presentarla.

''El abogado Sr. Mercader manifestó: que se oponía a que la corte admitiera ese escrito o confesión del acusado Carmelo Cortés, porque no había demostrado el Fiscal en ninguna forma los preparativos necesarios para admitir una confesión de acuerdo con la ley; y que del mismo escrito no aparecía que se hubiera advertido al acusado que tenía derecho a utilizar a un abogado, a guardar silencio o no declarar, y además notificarle claramente, que si declaraba la declaración podía ser utilizada en su contra; y porque apareciendo que es un menor de diez y nueve años, y en este caso no se había demostrado que tuviera suficiente capacidad para conocer el acusado la situación en que se hallaba, y porque la declaración que aparece traerse aquí en el documento está jurada, y que esto envuelve además un estado embarazoso · o situación penosa del acusado, y el temor de poder sufrir una condena por perjurio, lo que lo hacía rechazable de acuerdo con la jurisprudencia en materia de confesiones.

''El Hon. Fiscal dijo: que era admisible, porque constaba que se

hicieron por el Fiscal Sr. Palmer las advertencias y el derecho a declarar o nó.

"El Hon. Juez dijo: que la corte admitía la declaración esa y que podía leerla.

"El abogado Sr. Mercader tomó excepción.

"El Fiscal dió lectura a la declaración y es la siguiente: 'Yo, Carmelo Cortés, vecino de Arecibo, con residencia en el barrio de la Trocha, de 19 años de edad, de estado soltero, y de ocupación jornalero, ante el Hon. Fiscal del Distrito Judicial de Arecibo, debidamente juramentado, después de instruído del derecho que le concede la ley, o sea si quería declarar o nó, y que si lo hacía, su declaración podría ser utilizada en su contra dice:—Que lo único que desea es decir lo que ya había manifestado; que llevaba amores con María Guzmán y que sí gozó de ella, pero esto lo hizo con el consentimiento de dicha María Guzmán y sin ninguna violencia, pues ella misma le dijo que su madre le pegaba y que quería irse con él. Que es todo lo que tiene que manifestar. Se ratifica y firma.—(Firmado) Carmelo Cortés.—Suscrito y jurado ante mí, hoy día 28 de agosto de 1924.—(Firmado) S. B. Palmer, Fiscal del Distrito.''

Tres momentos distintos hay, pues, que considerar para decidir si existe o nó el error señalado. En el primero surge la admisión de su culpabilidad por parte del acusado a virtud de la declaración de Margarita Martínez. Aunque la defensa se opone, no toma finalmente excepción y la admisión queda en pie. En el segundo el juez es exigente y se niega a permitir que el jurado que ya había escuchado de labios de Margarita Martínez las manifestaciones del acusado, las oiga por medio del testigo Muñoz. Y en el tercero la declaración jurada y firmada del acusado se admite como prueba.

Analizadas esas tres situaciones separadamente primero y luego en relación creemos que puede y debe concluirse que no se violaron los derechos substanciales del acusado.

Se comprende la espontaneidad de la actitud del acusado. Su firma aparece al pie de su declaración y en ella consta que se le hicieron las advertencias de ley. El acusado no acepta que realizó acto alguno de fuerza o violencia en su declaración. Reconoce simplemente que yació con una mu-

jer con quien llevaba amores y que quiso irse con él. No paró mientes en la edad de la mujer. De ahí la facilidad con que habló. No hay indicio alguno de coacción. El documento es completo y habla por sí mismo.

[5] El quinto y último error se refiere a la apreciación de la prueba. No existe, a nuestro juicio. Resulta de la evidencia con absoluta claridad que el acusado bien fuera por engaño, ya por violencia más o menos fuerte, ya sin vencer resistencia alguna por la fuerza, lo cierto es que yació con una niña menor de catorce años. Y ello, por sí solo, es bastante. Art. 255, No. 1, del Código Penal. No importa que el acusado desconociera la ley. La ignorancia de la ley no excusa de su cumplimiento.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.